# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12 B 43452 |
| | ) | |
| RENITA SHERI HALL, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Pamela S. Hollis |

## ORDER OVERRULING TRUSTEE'S OBJECTION TO CONFIRMATION

This matter comes before the court on the Objection to Confirmation filed by Marilyn O. Marshall, Standing Trustee. The Trustee objects to confirmation of Renita Sheri Hall's proposed plan on the grounds that by continuing to make a voluntary 401(k) contribution in the amount of $648.14 per month, Hall is not applying all projected disposable income to make payments to unsecured creditors under her plan, in violation of 11 U.S.C. § 1325(b)(1)(B). For the reasons stated below, the court overrules the Trustee's objection.

## BACKGROUND

No evidentiary hearing was held, but the parties appear to be in agreement as to the relevant facts. Hall filed for relief under Chapter 13 on October 31, 2012. In each pay period during the six months prior to the petition date, her pay advices show regular 401(k) contributions of 10% of her gross earnings.

Hall is an above-median debtor. She entered $699.32 on line 55 of Form B22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Means Test"). Line 55 of the Means Test asks debtors to state their "Qualified retirement deductions," which is "the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all

required repayments of loans from retirement plans, as specified in § 362(b)(19)." Her monthly net disposable income was negative ($610.10).

In Hall's modified Chapter 13 plan, dated February 4, 2013, she proposes to make monthly payments of $500 for 23 months, stepping up to $550 for an additional 37 months, for total payments of $31,850. Unsecured creditors will receive no less than a 3% distribution on their claims.

## CONTENTIONS OF THE PARTIES

The Trustee contends that by continuing to make 401(k) contributions, Hall is not applying all projected disposable income to make payments to unsecured creditors under her plan. In support of her objection, the Trustee cites three cases: In re Seafort, 669 F. 3rd 662 (6th Cir. 2012) ("Seafort Circuit"); In re McCullers, 451 B.R. 498 (Bankr. N.D. Cal. 2011); and In re Prigge, 441 B.R. 667 (Bankr. D. Mont. 2010). The Trustee argues that only 401(k) contributions made prepetition are excluded from property of the estate, because § 541 specifically applies to property in existence as of the commencement of the bankruptcy case. Since only prepetition 401(k) contributions are excluded from property of the estate, these are also the only contributions excluded from disposable income. Postpetition contributions are included and must be applied to payments to unsecured creditors. Additionally, Congress specifically excluded 401(k) loan repayments from disposable income in 11 U.S.C. § 1322(f), but did not exclude 401k contributions in Chapter 13. This omission must have been intentional and purposeful on the part of Congress.

Hall argues that Seafort Circuit actually supports her position. "Congress intended to exclude from disposable income and projected disposable income available for unsecured creditors only voluntary retirement contributions already in existence at the time the petition is

filed." 669 F. 3rd at 674. In contrast to the Seaforts, Hall was making regular voluntary retirement contributions at the time her petition was filed.

Hall also argues that Prigge and McCullers are wrongly decided. Since § 541(b)(7) specifically states that amounts contributed to a 401(k) plan "shall not constitute disposable income, as defined in section 1325(b)(2)," it would have been redundant to have a special subsection addressing the issue in Chapter 13, as Congress did for 401(k) loan repayments in section 1322(f).

Additionally, Hall suggests that the language of the Means Test itself demonstrates that voluntary 401k contributions are meant to be excluded from disposable income.

Finally, Hall argues that the Trustee's interpretation creates an absurd result, prohibiting debtors from continuing 401(k) contributions that may have been in place for years. This runs counter to BAPCPA's policy of "restoring personal responsibility."

## LEGAL DISCUSSION

### When the Trustee or the Holder of An Allowed Unsecured Claim Objects to Confirmation, the Plan May Only Be Approved if it Provides for All of the Debtor's Projected Disposable Income to be Applied to Make Payments to Unsecured Creditors.

Since the Trustee objected to confirmation,

the court may not approve the plan unless, as of the effective date of the plan--. . .

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

The basis for the Trustee's objection to confirmation is that by making voluntary 401(k) contributions, Hall is not committing all of her projected disposable income to her unsecured creditors. The question before the court, therefore, is whether the postpetition funds that Hall

3

proposes to contribute to her 401(k) plan are included in Hall's projected disposable income, and thus should be made available to unsecured creditors.

"Projected disposable income" is not a defined term in the Bankruptcy Code. Instead, we must start with the definition of "disposable income." According to 11 U.S.C. § 1325(b)(2), as amended in 2005:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> > (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions....

In order to determine the meaning of disposable income, the court must first calculate "current monthly income received by the debtor." "Current monthly income" is defined at § 101(10A), a section added by BAPCPA in 2005. According to § 101(10A), we calculate a debtor's current monthly income ("CMI") by looking back at the average monthly income, whether taxable or not, that the debtor receives, so long as it is derived during the six months prior to the filing of the case. All income from any source is included, with the exception of Social Security benefits, payments to war crimes victims and payments to terrorism victims.

11 U.S.C. § 1325(b)(4) uses CMI to determine the "applicable commitment period" for a Chapter 13 plan. The debtor's CMI is compared to the median income for households of the same size and in the same state. If the debtor's CMI is higher than the median ("above-median"), the applicable commitment period for that debtor's plan is five years. If the debtor's

4

CMI is lower than the median ("below-median"), the applicable commitment period is three years. The parties agree that Hall is an above-median debtor.

Having used CMI to determine whether a debtor is above-median or below-median, the Code then puts it to another use – the calculation of disposable income as defined in § 1325(b)(2). While CMI excludes Social Security benefits, payments to war crimes victims and payments to terrorism victims, "disposable income" excludes even more categories of income: child support payments, foster care payments, and disability payments for a dependent child. 11 U.S.C. § 1325(b)(2). Additionally, § 1322(f) provides that the amounts required to repay a loan taken from a 401(k) account do not constitute disposable income.

After completing the income calculation, the debtor subtracts out certain allowable expenses to arrive at disposable income. Those allowable expenses are defined as the amounts reasonably necessary to be expended for her support or a dependent's support, for a postpetition domestic support obligation, and for charitable contributions. For above-median debtors, § 1325(b)(3) instructs the debtor to determine "amounts reasonably necessary to be expended" in accordance with § 707(b)(2)(A) and (B). Official Form 22C accommodates this instruction, and it restricts "reasonably necessary" expenses to those "applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(ii)(I). See Ransom v. FIA Card Services, N.A., ___ U.S. ___, 131 S. Ct. 716, 721-22 (2011).

"Disposable income," then, is the amount remaining from CMI after the exclusion of certain categories of income and after deduction of amounts reasonably necessary to be expended.

To make the leap to **projected** disposable income – all of which must be applied to make payments to unsecured creditors under the plan when an objection to confirmation is raised – we start with the calculation of disposable income. After calculating disposable income, the Supreme Court interpreted "projected" to require incorporation of changes that are known or virtually certain at the time of confirmation to occur during the applicable commitment period. Hamilton v. Lanning, 560 U.S. 505, 130 S. Ct. 2464, 2478 (2010). This is known as a "forward-looking approach."

### The Effect on Projected Disposable Income of Three Interpretations of the Hanging Paragraph of 11 U.S.C. § 541(b)(7).

There is one last piece to the puzzle. Having laid out the framework for calculating projected disposable income, the court must now determine how to incorporate the hanging paragraph of § 541(b)(7), which states that certain retirement contributions are not disposable income. Section 541(b)(7) provides:

> (b) Property of the estate does not include— . . .
>
> > (7) any amount--
> >
> > > (A) withheld by an employer from the wages of employees for payment as contributions—
> > >
> > > > (i) to--
> > > >
> > > > > (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
> > > > >
> > > > > (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
> > > > >
> > > > > (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>
> **except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)**; or

6

>                    (ii)    to a health insurance plan regulated by State law whether or not subject to such title; or
>
>            (B)    received by an employer from employees for payment as contributions—
>
>                    (i)    to--
>
>                            (I)    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>
>                            (II)   a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>
>                            (III)  a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>
> **except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2)**; or
>
>                    (ii)   to a health insurance plan regulated by State law whether or not subject to such title.

As one article notes:

> The problem with the hanging paragraph is that, on first read, it does not make grammatical sense. The words "except that," which begin the hanging paragraph, would normally indicate an exception to that particular rule, but instead, the statute continues to address a wholly unrelated topic: "disposable income" in a chapter 13 case. In a sense, in drafting § 541(b)(7)(A), Congress jumped from point A to point C, conflating distinct and arguably unrelated concepts (*i.e.*, property of the estate and disposable income) without explaining the logical connection between the two. As one court aptly said, "the hanging paragraph reflects its ambiguity," and attempts to divine its intended meaning to [sic] have "split the courts nationwide." The question then becomes whether the hanging paragraph functions to allow 401(k) contributions by above-median-income debtors in spite of the omission of 401(k) contributions from the list of necessary expenses under the means test.

Pernell W. McGuire, Aubrey L. Thomas, "401(k) Contributions Under Post-BAPCPA Case Law," 32-MAR Am. Bankr. Inst. J. 18, 19 (2013) (footnote omitted).

Three lines of case law developed to interpret this hanging paragraph. First, "a majority of courts have interpreted section § 541(b)(7) as unequivocally removing [voluntary retirement

contributions] from the projected disposable income calculation under § 1325(b)(2)." In re Drapeau, 485 B.R. 29, 34 (Bankr. D. Mass. 2013) (footnote with string citation omitted). Some of these "courts have determined that the omission of language limiting the amount of contributions grants debtors the discretion to set the amount of their post-petition contributions at any amount and this discretion is limited only by the good faith requirement imposed by § 1325(a)(3)." In re Egan, 458 B.R. 836, 844 (Bankr. E.D. Pa. 2011) (citations omitted).

Subsequent opinions – whether they follow this interpretation or not – often call this the Johnson viewpoint, after In re Johnson, 346 B.R. 256 (Bankr. S.D. Ga. 2006), one of the earliest post-BAPCPA decisions to adopt this line of reasoning. In that case, the bankruptcy court held:

> Sections 541(b)(7) and 1322(f) both plainly state that these contributions "shall not constitute disposable income." Congress has placed retirement contributions outside the purview of a Chapter 13 plan.
>
> Debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans.

346 B.R. at 263.

Three courts then departed from the Johnson viewpoint, allowing continued contributions but not increased or new contributions.

> In regard to retirement savings, Congress clearly intended to strike a balance between protecting debtors' ability to save for their retirement and requiring that debtors pay their creditors the maximum amount they can afford to pay. This balance is best achieved by permitting debtors who are making contributions to a Qualified Plan at the time their case is filed to continue making contributions, while requiring debtors who are not making contributions at the time a case is filed to commit post-petition income which becomes available to the repayment of creditors rather than their own retirement plan.

In re Seafort, 437 B.R. 204, 210 (B.A.P. 6th Cir. 2010) ("Seafort BAP"), affirmed on other grounds, 669 F. 3rd 662 (6th Cir. 2012); In re Jensen, 496 B.R. 615 (Bankr. D. Utah 2013); In re Noll, 2010 WL 5336916, *2 (Bankr. E.D. Wis. Dec. 21, 2010) (stating in dicta that "[i]f the

Debtors had been making voluntary contributions pre-petition, they would be allowed to continue those contributions").

The third camp, led by Seafort Circuit as well as Prigge and McCullers, holds that the specific language of § 1322(f) excepting 401(k) <u>loan repayments</u> from disposable income – but not 401(k) <u>contributions</u> – means that Congress knew how to draft an exclusion to disposable income and declined to do so for 401(k) contributions. Moreover, § 541(b)(7) "excludes from property of the estate only property that would otherwise be included in the estate under section 541(a). Thus, the most natural reading of section 541(b)(7) is that it excludes from property of the estate only those contributions made before the petition date." Seafort Circuit, 669 F. 3rd at 670 (quotation omitted). This effectively prohibits any voluntary contributions from income earned after the petition date.[1]

### The Third Interpretation of the Hanging Paragraph, Adopted by Seafort Circuit, Prigge and McCullers, is Flawed.

In Seafort Circuit, the Sixth Circuit began by assuming "that Congress's placement of 401(k) loan repayments <u>within</u> Chapter 13 itself and placement of the exclusion for voluntary retirement contributions elsewhere was deliberate" and significant. 669 F. 3rd at 672-73 (citation omitted). From this placement outside Chapter 13, the panel inferred that Congress intended a different treatment for voluntary 401(k) contributions than for 401(k) loan repayments.

This inference is unsupported. Chapter 5 applies equally to all bankruptcy cases. 11 U.S.C. § 103(a) ("chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title"). See In re Ryan, 725 F. 3rd 623, 625 (7th Cir. 2013) ("§ 506(d), which is part of Chapter 5, applies equally to cases under Chapter 7 and Chapter 13"). There is no reference to

---

[1] Seafort Circuit actually only affirmed the result of the BAP court's decision, i.e., funds available after the payment of 401k loans cannot be used to increase retirement contributions, as they must be used to step up payments to creditors. In Seafort, the chapter 13 trustee did not object to postpetition contributions continuing in the same amount made prepetition. However, the Circuit signaled that if the trustee objects, it would prohibit *any* postpetition contributions, agreeing with the minority view expressed in Prigge and McCullers. 669 F. 3rd at 674 n.7.

9

401(k) loan repayments in Chapter 5, therefore the status of loan repayments had to be addressed in Chapter 13. To repeat in Chapter 13 the statement already made in Chapter 5 that 401(k) contributions shall not constitute disposable income would be merely surplusage. See also In re Bruce, 484 B.R. 387, 394 (Bankr. W.D. Wash. 2012) ("Neither provision is located where one might expect to see deductions from disposable income, § 1325(b)(2). Instead, their location appears to be driven by the placement of the other provisions dealing with 401(k) loan repayments and 401(k) contributions to which they are appended, and their location denotes no significance on the question of their effect on disposable income.").

Next, the Seafort Circuit panel concluded that "if Debtors' theory that contributions to a qualified retirement plan never constitute property of a bankruptcy estate was correct, Congress would not have needed to include an additional provision in § 541(b)(7)(A) stating that such contributions are excluded from disposable income." 669 F. 3rd at 673.

This conclusion reveals a misconception about a fundamental aspect of bankruptcy law. If property is not property of the estate, it may still constitute disposable income. One does not necessarily lead to the other. As Judge Marilyn Shea-Stonum wrote in her dissent to Seafort BAP, "§ 1306(b) provides [that] the debtor remains in possession of all property of the estate, except as otherwise provided in the plan. The plan, in turn, must provide for the distribution of all projected disposable income to creditors. There is no requirement that all property of the estate must be made available to creditors in a chapter 13 case. The definition of the estate . . . is not relevant to the debtor's projected disposable income, which is the inquiry of § 1325(b)(1)(B)." 437 B.R. at 217 n.4

Third, in the phrase "under this subparagraph," the Seafort Circuit panel found further confirmation of its conclusion that the hanging paragraph refers only to prepetition contributions.

The panel determined that "under this subparagraph" was an intentional limitation of the disposable income exclusion to contributions in effect as of the commencement of the bankruptcy case. It is difficult to see how such a conclusion was reached, since § 541(b)(7) contains no temporal limitation while many other subparagraphs of § 541 do.[2] Indeed:

> While the debtor's property interests at the time a case is filed often comprise the bulk of the bankruptcy estate's property, the additional provisions of subsection (a), as well as the provisions of § 1306, add *postpetition* property to the estate. See §§ 541(a)(3)-(6); 1306(a). Thus, it cannot be said that the entirety of § 541, including the exceptions specified by § 541(b), is limited in scope to the date of case commencement. Rather, just as § 541(a) defines the scope of both prepetition and postpetition property of the estate, the limitations found in subsection (b) relate to both prepetition and postpetition property of the estate.

Drapeau, 485 B.R. at 36.

### Hall's Voluntary Retirement Contributions are Excluded From the Calculation of Her Projected Disposable Income.

This court finds the majority or Johnson interpretation, best expressed in the Seafort BAP dissent, and in the bankruptcy court's decision in Drapeau, to be the correct interpretation of the hanging paragraph. Therefore, Hall's postpetition voluntary retirement contributions must be excluded from the calculation of her projected disposable income. Furthermore, although it is not necessary to do so for purposes of today's decision, the court finds that even if Hall were beginning those retirement contributions postpetition and had made no contributions during the six months prior to filing her case, her future contributions would still be excluded from projected disposable income. This result finds strong support in pre-BAPCPA law, in the

---

[2] § 541(a)(5) includes certain property acquired within 180 days *after* the petition date and § 541(a)(7) includes property "…the estate acquires *after the commencement of the case.*" (Emphasis added.) Exclusions in subparagraph (b) also contain time limits that extend before and after commencement of the case. See § 541(b)(2) (refers to lease terminations *before* commencement of the case); § 541(b)(5) (refers to educational retirement account funds placed in the account not later than 365 days *before the date of the filing*); § 541(b)(6) (describes tuition credits purchased not later than 365 days *before the date of the filing of the petition*); § 541(b)(9)(A) (refers to proceeds of the sale of a money order on or *after* the date that is 14 days prior to the date the petition is filed), and so on.

majority of post-BAPCPA case law and in the expressed Congressional policy of encouraging retirement savings.[3]

We begin with § 541(a), which describes the property that comprises property of the estate. This estate is created at the commencement of the bankruptcy case. Section 541(a)(1) states that "all legal or equitable interests of the debtor in property as of the commencement of the case" comprise the estate, except as stated in subsection 541(b). Section 541(b)(7) defines a category of property excepted from the estate, which are employee contributions to a 401(k) plan held by an employer. The hanging paragraph of § 541(b)(7) states that the amount defined "under this subparagraph" shall not constitute disposable income. The prepetition contributions Hall made to her 401(k) plan are both excepted from property of the estate <u>and</u> are not included in her disposable income.

Without this exception in § 541(b)(7), Hall's 401(k) contributions would have been drawn into her disposable income. Why? Because disposable income is calculated by referring to current monthly income, which is the average monthly income from all sources that the debtor receives and that are derived during the six months prior to the petition date. Unless there is an applicable exception, all income from all sources is pulled into current monthly income, and thus into disposable income by operation of § 1325(b)(2). But the hanging paragraph of § 541(b)(7) tells us that the funds withheld or received by an employer for contribution to a 401(k) plan shall <u>not</u> constitute disposable income.[4]

---

[3] <u>See</u> James Winston Kim, "Saving our Future: Why Voluntary Contributions to Retirement Accounts Are Reasonable Expenses," 26 Emory Bankr. Dev. J. 341 (2010), for a discussion of Congress' intent to favor retirement savings over maximum payments to creditors in bankruptcy.

[4] Courts have made much of the fact that the hanging paragraph begins with the phrase "except that." This court agrees that this phrase makes no sense grammatically. Neither does the fact that there is a hanging paragraph at all, rather than a separate subsection addressing this issue. "But the awkwardness of the language does not warrant a strained reading of the otherwise clear pronouncement that voluntary retirement contributions are excluded from the § 1325(b) disposable income calculation. To the extent that the inclusion of the phrase "except that" is deemed surplusage, in the context of the otherwise plain meaning of the statute and absent any other indication to the

12

Therefore, contributions to a 401(k) plan do not make the transition from current monthly income to disposable income. "Retirement account contributions in § 541(b)(7) are not <u>subtracted</u> from current monthly income because they are exempted or excluded from the calculation; they simply "do not constitute disposable income" under § 1325(b) in the first place. 11 U.S.C. § 541(b)(7)." <u>In re Shelton</u>, 370 B.R. 861, 865 (Bankr. N.D. Ga. 2007).

When an objection to confirmation is raised, and a court must determine whether a debtor is contributing all <u>projected</u> disposable income, the court takes a debtor's disposable income amount and adjusts it based on "significant changes in a debtor's financial circumstances" that are known or reasonably certain to occur. <u>Hamilton</u>, 130 S. Ct. at 2471. In our case, there are no significant changes to Hall's financial circumstances. Therefore, Hall's disposable income is the same as her projected disposable income.

What if Hall had not been making prepetition 401(k) contributions, but decided to start or increase them postpetition? The court would take that known or reasonably certain fact into account when calculating <u>projected</u> disposable income. We know that amounts withheld by an employer from the wages of employees for payment as contributions to 401(k) plans "shall not constitute disposable income as defined in section 1325(b)(2)." When § 1325(b)(2) defines "disposable income," it does so "[f]or purposes of this subsection." Therefore, amounts withheld by an employer for contribution to a 401(k) plan are not disposable income for purposes of § 1325(b). What is the purpose of subsection 1325(b)? To determine when a plan may be approved over the objection of the trustee or the holder of an allowed unsecured claim – in other words, whether all projected disposable income to be received is being applied to make payments to unsecured creditors under the plan. <u>For this purpose</u>, amounts withheld by an

---

contrary, this Court should follow the Supreme Court's admonition in <u>Lamie v. U.S. Trustee</u> that a statute's mere "awkwardness" must not be allowed to alter its plain meaning." <u>Drapeau, 485 B.R. at 37.</u>

13

employer for contribution to a 401(k) plan are not pulled into projected disposable income whether the debtor is making contributions during the six month look back period, or starts new contributions after the petition date. This result places a retirement contribution on the same footing as repayment of a retirement loan, which is exempted from disposable income under Section 1325(f) of the bankruptcy code. While Congress' exclusion for contributions is less clearly expressed, there is no compelling reason to favor payment of retirement loans over contributions. Any ambiguity regarding exclusion of contributions from disposable income should be resolved in favor of retirement savings over payments to creditors.

Some courts point out that the hanging paragraph states only that the amounts withheld shall not constitute disposable income, and make no mention of projected disposable income. This argument is weak, for "projected disposable income" is not defined anywhere in the Code, and in fact a decision of the U.S. Supreme Court was required to provide clarity. See Seafort BAP (dissent), 437 B.R. at 218 ("The majority also reasons that if Congress had intended to exclude Qualified Contributions from projected disposable income, it could have easily tacked the words "or projected disposable income under § 1325(b)(1)(B)" to the end of the hanging phrase in § 541(b)(7). This suggestion ignores the fact that projected disposable income is not defined in § 1325(b)(1).").

The opinions in cases in the second and third camp concluded that when § 541(b) lists items which are excluded from property of the estate, it must only be referring to property accumulated as of the commencement of the case. Therefore, regardless of the purpose of the exclusion, it refers only to "voluntary retirement contributions already in existence at the time the petition is filed." Seafort Circuit, 669 F. 3rd at 674 (footnote omitted).

14

As alluded to earlier, this court disagrees. "While § 541(a)(1) does provide that 'all legal or equitable interests of the debtor in property as of the commencement of the case' become property of the estate, 11 U.S.C. § 541(a)(1), the words 'as of the commencement of the case' create a time limitation for <u>that subsection only</u>. They do not limit the remaining provisions of § 541." <u>Drapeau</u>, 485 B.R. at 36 (emphasis added). Section 1306(a) provides further support for this conclusion:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> >
> > (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

<u>Egan</u> notes that "[b]ased on the reference in § 1306 to the <u>entirety</u> of § 541, this Court finds a reading of § 1306 that incorporates on an ongoing basis the exclusions of § 541(b), inclusive of § 541(b)(7), [is] more consistent with the dynamic nature of chapter 13 cases." 458 B.R. at 846 (emphasis added).

Under either line of reasoning – the purpose of the exclusion, or construction of the exclusion in harmony with § 1306 and the nature of chapter 13 cases – this court finds that both prepetition and postpetition voluntary 401(k) contributions are excluded from disposable income, even if the debtor begins or increases those contributions after the commencement of the bankruptcy case.

Since 401(k) contributions are never pulled in to disposable income, they need not be subtracted out as reasonable and necessary expenses. This reveals another flaw in the reasoning of the third line of cases. Recall that <u>Prigge</u> concluded that "[t]he absence of any exclusion of

15

voluntary 401(k) contributions from the Code simply reinforces the Court's conclusion that Egebjerg and the IRS guidelines provide that contributions to voluntary retirement plans are not a necessary expense." 441 B.R. at 677. Seafort Circuit embraced this logic, concluding that "Congress also does not consider voluntary contributions as 'reasonable and necessary expense[s]' deductible from 'disposable income,' because it did not list them in § 707(b)(2)(A) & (B)." 669 F. 3rd at 672 (citation omitted).

But whether any case or guideline provides that contributions to voluntary retirement plans are a necessary expense is a red herring. We are never faced with the question of whether 401(k) contributions are a necessary expense because those contributions do not constitute disposable income in the first place.

An analogy may help underscore the point. If a type of property is excluded from property of the estate, but not listed in the exemptions under 11 U.S.C. § 522(d), is that type of property non-exempt? No, because only property that comes into the estate can be exempted back out. It is unnecessary to exempt the property, because it has already been excluded from the universe of property of the estate.

Similarly, it is a moot point to ask whether voluntary 401(k) contributions are a necessary expense. Those contributions are never included in disposable income in the first place, so they need not be pulled out of disposable income with other necessary expenses.

By contrast, Congress made a different choice with funds contributed to a 529 plan. "Section 541(b)(6), added by BAPCPA, expressly excludes, with certain exceptions, Section 529 accounts from property of the estate." In re Addison, 540 F. 3rd 805, 820 (8th Cir. 2008). There is no hanging paragraph at the end of § 541(b)(6), however, excepting those funds from disposable income. Therefore, to the extent a debtor contributed money to a 529 plan using

16

income received during the six months prior to the commencement of the case, that money is included in the calculation of current monthly income.[5] With no applicable exception, those funds make the transition to disposable income.

Congress made a policy choice, favoring saving for retirement over saving for the higher education of a child or grandchild. Why? Perhaps because one cannot borrow to fund retirement. Perhaps because the children or grandchildren who will be receiving the higher education could fund it themselves. Whatever the reason, 529 contributions are incorporated into disposable income while 401(k) contributions are not.

As observed earlier,[6] this subsection also provides further support for the conclusion that there is no time limit on the exclusion of 401(k) contributions in § 541(b)(7). Congress included very specific time limitations on the 529 exception in § 541(b)(6). The funds must have been contributed "not later than 365 days before the date of the filing of the petition [and] . . . in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $6,225." 11 U.S.C. § 541(b)(6).

Finally, courts that limit contributions to the level at which they were made prepetition, or find that all contributions should be counted as projected disposable income, may be concerned that debtors can abuse the "privilege" of saving for retirement by contributing large sums to their 401(k) plan and leaving pennies for their unsecured creditors. See Seafort BAP, 437 B.R. at 210 ("To conclude otherwise encourages the improvident behavior that BAPCPA sought to discourage.").

---

[5] The funds are also included in property of the estate, since contributions made within a year of the petition date are not excepted.
[6] See footnote 2, infra.

17

This fear is not well-grounded. Any potential abuse is easily forestalled by the requirement of § 1325(a)(3) that plans must be "proposed in good faith." Indeed, several cases examining objections to plan confirmation where debtors are making 401(k) contributions devote at least as much discussion to whether debtors could make 401(k) contributions and still propose a plan in good faith as they did to whether those contributions are projected disposable income. See In re Smith, 2010 WL 2400065, *3 (Bankr. N.D. Ohio June 15, 2010) ("[R]elevant factors may include whether the debtor increased his contribution on the eve of bankruptcy, the amount of any such increase, the financial planning justification for any such increase, and the amount of the debtor's 401(k) contributions relative to the distribution to unsecured creditors. Such considerations prevent the good faith argument from becoming the last refuge of scoundrels for rogue creditors wishing to object to everything."); In re Jones, 2008 WL 4447041 (Bankr. D. Kan. Sept. 26, 2008); In re Mati, 390 B.R. 11 (Bankr. D. Mass. 2008); Shelton, 370 B.R. 861.

In conclusion, we begin by calculating Hall's disposable income. Contributions she made to her 401(k) plan during the relevant look-back period are not included in that calculation. Hamilton v. Lanning tells us that here, as "in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." 130 S.Ct. at 2475.

This is not an unusual case where a court must take into account known or virtually certain information about the debtor's future income or expenses. In this case, Hall's projected disposable income will be the same as her disposable income. The amounts she contributed to her 401(k) plan during the look-back period are not included in disposable income, and with no change anticipated, nothing more is required.

18

## CONCLUSION

The Trustee objected to confirmation of Hall's plan on the grounds that by continuing to make contributions to her 401(k) plan, she was not committing all projected disposable income to her unsecured creditors. The court finds that Hall's prepetition 401(k) contributions are not included in calculating her disposable income. Having calculated Hall's disposable income, and finding that no changes are known or virtually certain to occur, the court finds that Hall's projected disposable income is the same as her disposable income, and that she is committing all projected disposable income to her unsecured creditors, and her plan is confirmed. For all of the reasons stated above, the court overrules the Trustee's objection.

ENTERED:

Date: 22 OCT 2013

PAMELA S. HOLLIS
United States Bankruptcy Judge